324-0210, Sean Lane and Katie Sims et al, Appellants v. Persona Identities, Inc. Appellee. Freisinger, if you're ready. Yep, good afternoon, your honors. Good afternoon. Good afternoon, your honors. I'm Jordan Freisinger. I represent Plaintiff Appellant in this matter. Plaintiff's appellants asserted claims against defendant Persona, alleging violations of the Illinois Biometric Information Privacy Act after plaintiffs were subject to Persona's biometric identity verification software. Afterwards, Persona moved to compel those claims to arbitration, arguing that they are a third-party beneficiary to the agreement formed between DoorDash and plaintiffs. However, that agreement did not contain any express language that Persona is a party to the agreement, nor did it contain any provision that could be reasonably interpreted to be drafted for Persona's benefit. Regardless of this fact, the circuit court made an air decision to confer third-party beneficiary status on Persona, despite the shortcoming and despite there being a lack of express language stating otherwise. Thus, plaintiff brings this appeal and asked this court to reverse the circuit court's earlier decision and remand this case for further proceedings. Now, as an initial matter, a defendant has argued that this court lacks appellant jurisdiction under Illinois Supreme Court Rule 307A1, which grants plaintiffs the right to this interlocutory appeal. Defendants made the argument that Section 16 of the FAA preempts Illinois Supreme Court Rule 307A1. However, Your Honor, Section 16 of the FAA is inapplicable in this forum as the rule prohibits appeals of an interlocutory order, granting a stay of action under Section 3 of the FAA and Section 4 of the FAA, which expressly deal only with the procedure to be followed in federal courts, not state courts. Conversely, in state court, the court proceedings are governed in accordance with the law of the jurisdiction. Thus, here they're governed in accordance with Illinois procedural law. Thus, the federal procedural rules do not apply in this forum. Now, because Illinois Supreme Court Rule 307 governs interlocutory appeals and because state court procedural law is applicable in state court proceedings, this court unequivocally has appellate jurisdiction over this matter. Now, moving on to our third-party beneficiary argument, and generally speaking, these agreements to arbitrate are matters of contract, and only signatories to these arbitration agreements are entitled to enforce them. This rule is not exceptionless. In Illinois, there are two types of third-party beneficiaries that are recognized, both being intended and incidental. However, intended beneficiaries are the only third-party beneficiaries that have enforceable rights under these agreements. Now, in Illinois, but in Illinois, there's a strong presumption against conferring contractual benefits on non-contracting third parties. And to overcome that strong presumption, defendant must demonstrate that the contract was made for their direct benefit, and they need to do so by an express provision in the contract declaring a studge. Third parties, such as defendant, bears the burden of showing that the parties to the contract intended to confer this direct benefit. Council, can you address the issue with regards to the fact that the contract between the plaintiffs and DoorDash expressly provides that the provision of the FAA and federal will be applied to this? I'm sorry, which provision of the FAA, Your Honor? Just the omnibus clause that federal law is, this will be construed under federal law. Your Honor, the argument that federal, the FAA is generally applicable to arbitration agreements. However, first there needs to be a contract formed between the parties before the provisions of the FAA are applicable. And specifically in this matter, Persona is not a party to this case. So the first step of the analysis needs to be whether Persona has rights to enforce the provisions of the contract prior to applying the FAA and the federal rules that govern it. So because Persona is not a party to the agreement, because our argument, and because we asked this court to decide that Persona has no rights to the agreement, the language and the applicability of the FAA is premature. And it is not relevant. Okay, the contract clause says, the parties expressly agree that this agreement shall be governed by the FAA, even in the event contractor and or DOORDASH are otherwise exempted from the FAA. Any disputes in this regard shall be resolved exclusively by an arbitrator. If any, for any reason, the FAA does not apply the state law governing arbitration agreements in the state in which the contractor operate shall apply. That's the clause that I was referring to. Yes, Your Honor. And looking at the language of that provision, it explicitly states that it is an agreement between the parties. Thus the parties are bound to that provision and Persona is not a party to this agreement. So for any dispute brought between the parties or amongst themselves being DOORDASH and plaintiffs, those disputes are governed by the FAA. However, disputes that are brought outside of the agreement, the provisions of the FAA and also the provisions of the contract which you just cited are irrelevant, especially when you apply them to Persona as a non-party to the agreement. Okay, and I don't recall either side citing to any authority for that particular proposition. Correct? That is correct, Your Honor. It's a contractual premise that in Illinois arbitration agreements are matters of contract. Thus the provisions of those contracts are what the parties are bound to and thus the parties outside or who are not referenced in those provisions have no enforceable rights. For example, in our case, Sosa versus Onfedo, they state that there is the strong presumption against conferring those contractual benefits and applying those provisions on those non-contracting third parties when they were getting into whether or not Onfedo would be considered a third party beneficiary to the agreement. Okay. Now, Your Honor, Your Honors, looking at the specific provisions of the independent contractor agreement that was formed between Doordash and plaintiffs, the language of the contract echoes its exclusive intent. The very first sentence says that the agreement is made and entered into between you, the underside contractor and Doordash. And then further, if you look at the more arbitration relevant provisions of the agreement, it states that the mutual arbitration provision requires the parties to resolve disputes through final and binding arbitration, specifically referring to the parties. And even further, it states that contractor and Doordash mutually agree to this arbitration provision. Your Honor, nowhere in the independent contractor agreement does it express that those provisions or the contract as a whole extends to apply to third parties or parties who are considered outside of the agreement. They explicitly state that they only apply to the parties or the signatories to the contract, which is Doordash and plaintiffs. Now, the defendant is aware that they have to come forward with some type of express language to make the argument that it is considered a third party beneficiary, which is why they lodged their argument, unconvincingly so, to this provision that states that, this states that for the safety of the consumers on the Doordash platform, its contractors must pass a background check administered by a third party vendor. This argument is unconvincing and it's not sufficient to confer third party beneficiary status on any party, let alone persona who's unnamed or identified by it. And if you think about the standard that's required to confer third party beneficiary status, what is required is there needs to be an express declaration or there needs to be an express provision that it is drafted to benefit the non-signatory. Looking at this provision that the defendant relies on, it specifically states that it's drafted for the safety of consumers on the Doordash platform. Thus, the contract tells you that it's for the benefit of the consumers, not for personas benefit. And even further looking at, and even further, that provision does not identify persona. As we mentioned in our briefing, the party who's mentioned as the third party vendor by Doordash is a completely, or that's referenced in this provision as a completely separate third party checker who's identified by Doordash on their website as providing the background checks. Thus, in this provision, Doordash is not intended to benefit from it, nor are they identified. Thus, it cannot be interpreted to confer third party beneficiary status on them as a party. Now- Mr. Freisinger, excuse me. Was the trial court ever given any evidence that persona did or did not administer the background checks? No, Your Honor. The trial court, in error, based that decision off of a lack of evidence that persona was providing background checks. It was a baseless assertion, and the circuit court agreed with it, and they decided because they're performing background checks that they are conferred third party beneficiary status. Now, Your Honors, looking at courts applying Illinois law that routinely refuse to confer third party beneficiary status on non-signatories agree that without express language stating otherwise, the agreement is presumed to benefit only the parties to the agreement. Looking at the Seventh Circuit's decision in Kotney versus Ancestry, their decision in Sosa versus Onfedo, and also the Northern District's decision in Johnson versus MITEC, those courts all held that defendant did not overcome the strong presumption against conferring third party beneficiary status on non-signatories, where the express language of the agreement did not provide for it. And I'd like to point your direction specifically to the Sosa versus Onfedo case, which is factually analogous, and we believe instructive in this matter, where Onfedo, who is a third party to a contract agreement between the plaintiffs and the application holder, OfferUp, when plaintiffs brought BIPA claims against Onfedo, Onfedo moved to compel arbitration, arguing that they're a third party beneficiary to the terms of service between plaintiffs and OfferUp, because those terms specifically referenced Onfedo's biometric software. So they were specifically referenced in the terms and conditions. However, the court disagreed with defendant's argument, stating that because the section mentioning Onfedo's biometric software does not directly benefit Onfedo, it directly benefits OfferUp, the court cannot confer a third party beneficiary status. They reasoned that looking at the provision that provided for the biometric software, its purpose was to exist so that OfferUp can obtain necessary consents from its user, from its user base, prior to providing their biometrics to the app. Thus, the provision is very explicitly designed to benefit OfferUp and not Onfedo, despite the mentioning and passing of its biometric software. Further, the court also noticed in that case that nothing else in the terms of service indicate that this provision referencing the biometric software or any other section in the contract as a whole was intended for the direct benefit of Onfedo, and thus they were reluctant and decided not to confer a third party beneficiary status on Onfedo. Scrape cases, it's directly instructive here, where similarly our contract has no express language pointing to Persona, identifying Persona, and there's no provision in the contract that can be interpreted to be drafted for Persona's benefit. And conversely, looking at a situation where the contract was drafted for their benefit, looking at Cash Keys versus Microsoft very quickly, which is another factually analogous case, Microsoft moved to compel arbitration as a non-party, arguing that they're a third party beneficiary to agreement between Cash Keys and Uber. The court specifically examined the arbitration clause in that contract, and they stated that the court held that because the contract explicitly specified that disputes against other entities are covered, what it said was disputes between the parties and any other entity arising out of the party's use of the Uber application, because that express language existed, that Microsoft can enforce the agreement as a third party beneficiary. No such language exists in this contract between plaintiffs and door dash, your honors. Thus, we ask that you similarly decide to refuse to confer third party beneficiary on status on Persona and reverse this decision of the circuit court. Thank you. Thank you, counsel. Mr. Griswold. Good afternoon, justices. May it please the court. My name is Joel Griswold, here on behalf of the appellee Persona Identities, Inc. Appellants in interlocutory appeal should be rejected for two separate reasons. First, the appeal should be dismissed for lack of jurisdiction since section 16B of the Federal Arbitration Act expressly prohibits appeals from an interlocutory order, granting a stay under section three or compelling arbitration under section four of the FAA. Second, and in the alternative, the circuit court's decision, staying and compelling arbitration should be affirmed because the record reflects the Persona is in fact an intended third party beneficiary to the agreement. Counsel, Illinois courts have always accepted interlocutory appeals of a decision to allow or not allow arbitration. Are you asking us to make new law here? Your Honor, I'm actually asking that we take maybe an eye towards this specific agreement, the party's agreement to be, that the agreement be bound by the FAA and the procedural posture in which this case finds itself in light of Supreme Court authority that finds that the FAA does apply in both state and federal courts. If I may, Your Honor, section 16B does expressly prohibit in no uncertain terms, an interlocutory appeals from orders staying under section three of the FAA or compelling arbitration under section four of the FAA. Our motion was brought pursuant to section three and section four of the FAA. That motion was successful and candidly, this really shouldn't, there shouldn't be an appeal right now. The Supreme Court and EPIC systems has explained the FAA applies to both state and federal courts and establishes a liberal federal policy favoring arbitration agreements. Two months ago in Smith versus Spirisi, the U.S. Supreme Court provided some additional guidance in terms of the reasoning and the federal policy behind the FAA and why it disallows appeals from orders granting stays and compelling arbitration versus those that deny it. Specifically, the court explained that when a court denies request for arbitration, section 16 of the FAA authorizes an immediate interlocutory appeal. When a court compels arbitration, by contrast, Congress made clear that absent certification of a controlling question of law by the district court under 28 U.S.C. 1292B, the order compelling arbitration is not immediately appealable. Mr. Griswold, this was the Arizona case that was removed to federal court, correct? Your Honor, I believe this was, yes. And there was no motion filed within the trial court. It was only in the state court. This motion was only brought after it was removed to federal court, correct? Correct, Your Honor. And I'm happy to get into what, actually in the Preston case we cite, Your Honor, I think it also talks about the application of the FAA in both state and federal court. Just to finish my line of thought on Spirisi, because I think this is important, the court explained the federal policy behind this dichotomy in allowing appeals. And I think it was Justice Sotomayor explained that the choice to provide for immediate interlocutory appeals of orders denying, but not orders granting motions to compel arbitration is consistent with Congress's purpose in the FAA to move the parties to an arbitrable dispute out of court and into arbitration as quickly and as easily as possible. That's consistent with, again, longstanding Supreme Court authority favoring arbitration under Moses H. Cohn Memorial Hospital. Now, Your Honor, in terms of, your point was well taken, Justice Albrecht, about, well, Illinois courts have been doing this. Why does the FAA apply in state court? Well, first of all, you have to qualify yourself as entitling yourself to be used by that provision. And how is the issue of the first, the preliminary issue is whether or not you fit, you are entitled to assert any provision of the agreement between the plaintiff, Sam Dordish. That's a fundamental preliminary question. So the issue is whether you even qualify to assert the FAA provision. Your Honor, I'll flip my arguments for a moment so we can kind of circle back here then to your point. The red light has come on, and that means your argument is- Well, but I wanna give him a chance to respond to- Also, time out, folks, that has to be wrong because he had 15 minutes, yeah, and there was nine and a half minutes left. That's the next thing I wanted to point out. I'm guessing, Justice, is that the last argument that I had, which I was on, was seven and a half, and I think that may have stayed that way. So let's assume that you're halfway through your argument and keep an eye on seven and a half. If you can, if the clerk can reset that, please. Go ahead, Justice. Sorry, Justice, okay. I just have my phone here. So let's back up in terms of whether persona is a third-party beneficiary. When a trial court is presented with a motion to compel arbitration or Section 4 of the FAA, their job is really to look at whether there's a valid written agreement to arbitrate and whether the issues in dispute fall within the scope of the agreement. Here, appellants do not contest that they entered into the contract or agreement which contain the arbitration provision that we're talking about. But they didn't enter into the agreement with persona. That's correct, Your Honor, and that's the whole point of having a third-party beneficiary analysis. Third-party beneficiaries, by definition, are not signatories to the agreement. But we- Mr. Griswold, I'm sorry, go ahead, Ms. Justice Albrecht, go ahead. Before you get to the question of whether or not the provision compels to compel arbitration is appropriate, you have to show that you're entitled to assert that provision. That's whether the- So, I mean, it's a question of what's the cart and what's the horse. To my mind, in order to even get to the point of whether or not the FAA applies, you have to show you're entitled to, you're a third-party beneficiary of this agreement. Your Honor, I understand, and I will get there. So, here's what's not disputed. What's not disputed is appellants don't dispute that they entered into the contractor agreement with the arbitration provision. They don't dispute that there's a valid formation of an arbitration agreement. They also don't dispute that the Illinois Biometric Information Privacy Act claims that they're asserting are covered by that agreement. What they are disputing is that only, basically, Persona is not entitled to compel arbitration of their BIPA claims, their biometric claims, against Persona because they were not a party and they're claiming not a third party as a beneficiary interest in this case. We disagree, and so did the Circuit Court. Your Honor, first of all, in Illinois, to create a third-party beneficiary, an intention must be shown by an express provision in the contract identifying the third-party beneficiary by name or by description of a class to which the third party belongs. Now, the contractor agreement identified a class of third-party beneficiaries to which the appellee belonged. The contractor agreement provides that in order to perform any contracted services, contractor must, for the safety of consumers on the DoorDash platform, pass a background check administered by a third-party vendor, okay? Plaintiffs' own allegations show that Persona was administering background check activities for DoorDash. All right, Mr. Griswold, let me ask you a question. I'll ask you the same question I asked Mr. Freisinger. What evidence was produced to the trial court that Persona administered any of the tests, or did not, did or did not administer any of them? Your Honor, in terms of, I guess, are you asking about it? I don't know what you mean by test, but we have plaintiff's allegations that, and if I can get to them. Can you tell us where those allegations are, please? Yeah, yes, yes, I can. Actually, let me say, specifically, plaintiffs allege that DoorDash implemented defendant's API into his driver registration process in order to verify its driver's identities. If you look at paragraphs 18, 19, 20, 21, 22, and 23 in the record, those are pages four and five of the supporting record, plaintiffs made allegations that defendant developed and operated a proprietary biometric-enabled software API, and that DoorDash used this and incorporated it into the registration process, and that both the appellants, when through the DoorDash application, used Persona's identity verification services. These are plaintiff's allegations about what Persona did, and they're undisputed in terms of the allegations in the complaint. How is that part of a background check? Your Honor, first of all, background check is not defined here in the contract, but I will tell you that I'm not aware of any background check in any form that doesn't involve, as the very first step, if not the only step, identifying who the person is. That's the whole point of a background check. You have to know who you're conducting a background check. Okay, what you just said is not anywhere in the record. Your Honor, but that's common sense. They've alleged that we provided identity verification services just because they didn't allege that we were a background check provider. They've alleged that we have yellow feathers, quack, and have webbed feet. They've alleged that we're a duck, and I think the Circuit Court got it correct when they made that reasonable inference that identifying somebody and proving that this is the person is inherently, and it can't be anything other than part of a background check. I mean, that's the fundamental stuff of every background check. In fact, it may be the only step in background checks is confirming that you are who you say you are. I don't think there needs to be evidence or authority. Plaintiffs' own allegations establish that. Just a minute. Justice Heddle, did you confer with the clerk that they've reset it because it still is showing? Yeah, it's been that way for its entirety. I have my clock. There's still about six minutes left. All right, three minutes, 29 seconds left. Thank you. I've got 1.29. We'll go with the clerk. Go ahead. All right. Thank you, Your Honor. And in addition, Justices, this contract has a very broad and general definition of what the parties intend to be arbitrated, okay, to have arbitrated. They say it's any and all aspects arising from the relationship between these parties, okay, but for the appellants registering through DoorDash, Persona would never have any interaction with them at all in terms of verifying their identity. Persona- Mr. Griswold, Mr. Griswold, Mr. Griswold, doesn't there have to be an agreement to arbitrate between the parties, the parties being Persona and the Washingtons? So that agreement to arbitrate is the issue right now between parties. So you're talking about a very specific contract between, and Persona was not a subject, a party to that contract, correct? Your Honor, Persona was not a signatory to the contract, but you don't have to be a party to a contract to enforce it. That's the kind of principle behind the intended third-party beneficiary. If the parties contemplated that a third party would be able to take benefit of that contract, which I think they did here, and candidly, Justices, I think it makes some sense to take a quick step back here. Given how broad DoorDash and appellants defined the scope of the arbitration agreement, again, any and all aspects of the relationship, they clearly, it would be counterintuitive to assume that they meant to allow appellants to bring lawsuits against background check vendors and other vendors that are integrally involved and incorporated into the registration process, allowing appellants to bring those cases in court and thereby circumvent the arbitration agreement so they could seek liability against DoorDash via indemnification. It would seem very counterintuitive to allow that to happen. The parties, again, DoorDash and appellants, in the face of this, it's a very broad, sweeping, one of the broadest I've ever seen. And I had the Amphedo case that counsel referenced. This is not like the Amphedo case. Amphedo specifically limited to, really, parties were defined as those two. There was a reference, it was a different situation here. We have a much broader arbitration agreement here, much broader scope. In terms of, I'm just gonna circle back really quickly, if you don't mind, to the Kakish case. The Kakish case involved almost analogous situation here, except our arbitration agreement is actually broader than what we're talking about here. But their lawsuit against Microsoft, which provided a third-party API involving facial identification for Uber Eats, which is a rival of DoorDash, right? And we're in basically the same situation as Microsoft. Microsoft, that definition, in terms of how they defined the scope of the agreement there, was much narrower. It wasn't any and all aspects of the relationship. So they did say any other entities, because they had to, because the agreement itself wasn't broad enough. Here it is. And here, if the purpose of the Arbitration Act is to give the benefit to the parties that we're gonna err on the side of favoring arbitration, then assuming that all disputes arising from the relationship is the most accurate way to enforce the agreement. Thank you for your time. I see my time is up. Thank you, Mr. Griswold. Mr. Freisinger, you are muted right now, but you have five minutes on rebuttal. Thank you, Your Honor. Your Honor, just very quickly, I think counsel's last argument very brilliantly explains our position. He noted the difference between the contract here that has a broad application in its scope to disputes that are covered. It states that any and all aspects related to the contract, however, it applies to those disputes that are specifically brought amongst the parties, the parties to the agreement, DoorDash and Persona. And you compare that to what is said in Kashkish where it specifically applies to the entities. Thus, those parties were expressly enabled to extend the application of the arbitration agreement to third parties so that the third party, Microsoft, could enforce the arbitration agreement. Here, Persona is not a party to the agreement. They don't show up anywhere in the agreement. And as Your Honors have mentioned several times now, there's no evidence of them being involved in the background check, and there's no evidence of them performing background checks. And quite frankly, Your Honors, even if they were the party that was performing background checks, that specific provision that's providing for DoorDash drivers to pass a background check is not sufficient to confer third party beneficiary status on any third party. So Your Honor, just without any evidence suggesting otherwise, and without any expressed language in the contract that identifies Persona, that states that this mutual arbitration can apply to third parties, or any provision in the contract as a whole that can reasonably be interpreted to benefit Persona in its entirety, this court cannot, and the circuit court did an error conferring third party beneficiary status on Persona. And we believe that that is an error, and they did so making a baseless assertion based off of no factual evidence, also in application of the facts, and also a misapplication of the legal standard.  I disagree that the allegations of your complaint don't suggest that they did a background check. Your Honor, the allegations of the complaint specifically state that Persona performs identity verification. If the contract stated that this mutual arbitration extends to third parties and Persona's affiliates performing identity verification services, then maybe they would be considered a third party beneficiary to the agreement, but that language is completely absent. And quite frankly, throughout their briefing and in their argument, they're struggling to bring forth a provision that tells us that they benefit from the contract between plaintiffs and Doordash, Your Honors. Thank you. Your questions, Mrs. Hovland? Mrs. Davenport? No. Gentlemen, thank you for your arguments. Sorry about the clock issue there. It made it a little bit more choppy than it should be, but we appreciate it. We'll take the case under advisement, and the court will...